PeaRsok, J.
 

 There are so many difficulties in the way of the plaintiff, any one of which is a good ground for sustaining the demurrer, that we hardly know upon which to put our opinion.
 

 Treating this proceeding as a petition in the cause, we are
 
 *331
 
 informed that the cause was instituted in the Court of Equity for Granville County; so, this petition cannot he entertained in the Court of Equity for the County of Orange. To avoid this objection, the proceeding is styled
 
 “m the natnure of a petition”
 
 This is a novelty, hut it does not meet the difficulty. Besides, we are informed that in the cause in Granville, at March term, 1849, a decree was made, directing the clerk and master
 
 “
 
 to pay over the fund to John Wimbish, which was accordingly done.” We are not informed whether there has been a final decree or whether the cause is still pending in Granville “ on further directions.” If the former, in order to get rid of the decretal order directing the fund to be paid over to John Wimbish, there' must be a bill of review; if the latter, there must be a petition to rehear in
 
 the same
 
 Oowrt, and not something “ in the nature of a petition” in another Court, praying a decree directly in the face of a decretal order, which still remains in full force and unreversed.
 

 But if we treat this as an original bill, the difficulties accumulate. It asks the Court of Equity for Orange County, to decree that the defendant shall account with, and pay to, the plaintiff, a portion of a fund which the defendant received by force of a decree of the Court of Equity of Granville County, and is similar to an action of assumpsit for
 
 “
 
 money had and received,” when the money has been recovered by a judgment.
 

 Again, according to the plaintiff’s own showing, if he is entitled to a portion of the fund, his wife is entitled to the balance; so, if he recovers his part in this original bill, he will then file another original bill in the name of himself and wife, for her part, making two bills and two accounts in regard to the same fund. This is literally “ taking two bites at a cherry,” an unnecessary splitting up of a cause, which the practice of this Court will not allow; its policy being to discourage a multiplicity of suits; so his wife is a necessary party.
 

 Again, according to the plaintiff’s own showing, his wife acquired title to the land mentioned in the pleadings, under tiie will of Mrs. Ann Yaughan; he entered and was thereof
 
 *332
 
 seized, had issue, and became entitled to a separate estate in his own right, as tenant by the courtesy initiate; but he does not show that the title of either himself or wife has been divested and passed out of them, so the land still belongs to them: of course, they can have no title to the fund now in question, that being a matter which it concerns the purchasers, under the decree in Granville, to see to.
 

 As a last resort, the plaintiff informs us that, at September term, 1853, of the Court of Equity of Granville County, one
 
 Osborn
 
 Vaughan, and others, filed a bill against Samuel Dickens, executor of James Yaughan, and Thomas Yaughan and Thomas Howerton, the plaintiff, executors of Ann Yaughan, praying for a sale and division of the land. An order of sale was made, and he, Thomas Howerton, (the plaintiff,) was appointed commissioner, and as such, sold the land. The sale Avas confirmed, the money paid in, and afterwards paid over, by a decree of the Court, to John Wimbish, (the defendant,) who was the administrator, Avith the will annexed, of the original testator, James Yaughan. We are not told Avho this Osborn Yaughan was, but presume he was one of the heirs-at law of James Yaughan, and that
 
 “
 
 the others ” Avere the rest of the heirs-at-law. So, it seems they acted upon the assumption that the land belonged to them as heirs-at-law, and asked for a sale, for the purpose of* partition among themselves, as tenants in common. We are unable to conjecture Avhy the executors of James Yaughan, or of Ann Yaughan, were made parties; but there is no suggestion that the bill contained any allegation that the land, or any part thereof, belonged to the plaintiff, or to his
 
 wife;
 
 so, the land was sold as the property of the heirs-at-law, and the right of the plaintiff and his wife unaffected by the sale.
 

 To the question how can Howerton and his wife make out any title to the fund, the answer is, — true, Mrs. Howerton has no title ; but Howerton, the present plaintiff, is entitled to a portion of it by estoppel; and the argument is this: he is estopped, being a party of record. Estoppels are mutual; therefore, John Wimbish, the administrator with the will an
 
 *333
 
 nexed, cannot deny liis title to a portion of tlie fund. This is a nonsequitur. It would hit nearer the mark, if aimed at tire heirs-at-law, the land having been sold as their property ; hut it is a singular attempt on the part of the plaintiff, to take advantage of his own wrong, or rather his own folly, as a foundation for his title to a portion of this fund. Being a party to the bill filed by the heirs-at-law, he ought then to have alleged
 
 title in himself and
 
 wife, so as either to stop the sale, or j oin in and have his own title, as well as that of the heirs, sold, in which event he would have been entitled to a portion of the fund.
 

 This distinguishes our case from
 
 Armfield
 
 v. Moore, Bus. R. 158, relied on by plaintiff’s counsel. There, the petition alleged that the slaves belonged to James Moore, Elizabeth Carnes and Jane Moore, each being entitled to one-third, as tenants in common. This allegation was acted upon, and partition made; and it was held that James Moore could not gainsay this state of facts, or be heard to say that Jane Moore was not entitled to one-third part, and that it belonged to him, as the administrator of the deceased husband of the said Jane. Here, there was no allegation that the land belonged to the plaintiff, and no action was taken in respect to his title.
 

 If one stands by, and sees his land sold as the property of another, and does not make known his title, he is, in most cases, on the ground of fraud, not permitted to set up his title against the purchaser. The idea that, if there is no fraud, but mere ignorance or folly in not making known this title, and in making sale as commissioner, he can afterwards claim a part of the purchase-money, is of the first impression.
 

 Pee Cueiam. Demurrer sustained, and bill dismissed with costs.